IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAYCHELLE FREEMAN and
BOBBY DEAN, SR., individually and on behalf of
other similarly situated employees,

                Plaintiffs,

              v.

TOTAL SECURITY MANAGEMENT -- WISCONSIN, LLC,
TOTAL SECURITY MANAGEMENT -- ILLINOIS 1, LLC,
TOTAL SECURITY MANAGEMENT -- INDIANA, LLC and
TOTAL SECURITY MANAGEMENT, INC.,

                Defendants.

OPINION AND ORDER

12-cv-461-wmc

Plaintiffs Raychelle Freeman and Bobby Dean, Sr., bring this suit on behalf of themselves and a putative class of employees of Total Security Management, Inc., alleging that they were required to do pre-shift work and attend work-related training without compensation, both in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and applicable state wage and hour laws.  Plaintiffs seek monetary damages in the form of unpaid wages and, where applicable, overtime pay.  Plaintiffs now move for conditional certification of (1) a nationwide class of employees who attended mandatory or job-related trainings without compensation, and (2) a Wisconsin-only class of employees allegedly required to do unpaid work before their regular shift.  Plaintiffs also move to strike some of defendants' evidence submitted in opposition to the class certification motion.

For the reasons set forth below, the court will partially grant and partially modify plaintiffs' motion for class certification, conditionally certifying (1) a nationwide class of employees who were not compensated for attending training directly related to their jobs; (2) a Wisconsin class of employees who were not compensated for attending mandatory trainings on the use of work equipment; and (3) a Wisconsin class of employees who were not compensated for mandatory, pre-shift work.  As a preliminary matter, the court will also deny plaintiffs' motion to strike.

PRELMINARY MATTER

Defendants contest plaintiffs' motion for conditional certification, arguing that there is no common employer policy or practice that connects the representative plaintiffs to members of the proposed class.  In support, defendants filed declarations of various employees, each averring that he or she has not been subject to the alleged policies.  Plaintiffs seek to strike portions of two such declarations on evidentiary grounds, pointing out that affidavits submitted in support of a motion for conditional certification must comply with the Federal Rules of Evidence.  *See Berndt v. Cleary Building Corp*, W.D. Wis. No. 11-cv-791-wmc (citing *Sjoblom v. Charter Comm., LLC*, No. 3:07-cv-451-bbc, 2007 WL 4560541, at *10 (W.D. Wis. Dec. 19, 2007)).

First, plaintiffs contest the bolded sentence in paragraph 7, sentence 3 in the declaration by Charles Freeman, set forth below:

> 7.   Since starting with TSM, I have not taken any training for baton, OC spray, handcuffs, or firearms.  My supervisors, Dan and Ryan, told me that I could take this training if I wanted to, but I told them no thanks and they said okay.

> **The way I see it, I don't need training on these items because I don't plan to ever work at any of the bank branch locations where Protection officers may carry this equipment.**  Neither Dan nor Ryan, nor anyone else at TSM, told me that I would be disciplined or terminated if I didn't take this training, and I have not received any discipline for not taking this training.

Plaintiffs assert that the bolded statement is speculative and irrelevant, and thus inadmissible under Federal Rules of Evidence 602 and 401.  The court disagrees.  The testimony is not speculative in that Freeman is simply explaining why he chose to forego training that would not help him.  This sort of opinion is within Freeman's competence, provides appropriate background, and is not prejudicial to plaintiffs.  As for the relevance of this opinion, defendants' legal duty to compensate for training attendance *may* depend on whether the trainings were directly related to an employee's current job duties (as discussed in more detail in the following analysis).  Mr. Freeman's testimony at least indirectly sheds light on this issue.  Defendants' motion to strike this bolded sentence will be denied.

Second, plaintiffs contest the bolded phrase in the final sentence of paragraph 6 in the declaration of Santiago Zarate as set forth below:

> 6.   TSM offers company-sponsored trainings to Protection officers.   I have attended training on batons, OC spray, handcuffs, and firearms.  I did not have to pay anything to attend these trainings.  I have received certificates or cards for completing these trainings, and **I believe that I could use these certificates or cards to work for other companies or organizations**.

Plaintiffs contend that this bolded phrase statement is inadmissible under Federal Rule of Evidence 602 as speculation, because defendants have not laid a foundation as to

the basis for Mr. Zarate's belief that he can use these certificates for other employment. However, no foundation is needed because Mr. Zarate is averring *his* belief, not reality. Because it is only his belief, the statement is admittedly of minimal relevance, and therefore will be accorded less weight, but the court will not strike it.

## BACKGROUND

### A. Parties

Defendant Total Security Management, Inc. ("TSM, Inc.") is a holding company that owns and directs state-level TSM entities in Wisconsin, Illinois, Indiana, Missouri and Arizona. Under this umbrella, defendants Total Security Management – Wisconsin, LLC (TSM – Wisconsin), Total Security Management – Illinois 1 (TSM – Illinois), and Total Security Management - Indiana (TSM - Indiana) are all limited liability companies in the business of private security. Each company contracts to provide security guards -- "Protection Officers" -- to banks and other businesses in their respective states. Defendant TSM - Illinois also operates as something of a headquarters for the other state-level branches, providing back-office support.

The named plaintiffs in this case are Raychelle Freeman, who worked for defendant TSM – Wisconsin as a Protection Officer, and Bobby Dean, Sr., who worked for defendant TSM – Illinois as a Protection Officer, Site Supervisor, and Field Supervisor in the Chicagoland area covering locations in Illinois and Indiana.

### B. Mandatory and Job-Related Training

Raychelle Freeman avers that she was required (1) to carry handcuffs, pepper spray and a baton on the job, and (2) to know how to use these items to deal with intruders and to make arrests, if necessary.  Freeman also avers that she was required to attend without compensation company-sponsored trainings for handcuff, pepper spray, and baton use.  Bobby Dean, Sr., avers that he was required to carry handcuffs, a baton, pepper spray and a handgun on the job.  He further avers that he was required to attend, but was not compensated for, "various training classes, including handcuffing, [pepper] spray, baton, and handgun use."  On the basis of this testimony, both plaintiffs assert that they are entitled to compensation for time spent training in the use of work equipment because: (1) the trainings were not voluntary; and (2) the trainings are directly related to their jobs.

The named plaintiffs allege that other employees within their respective state-level TSM branches, as well as employees at all other TSM state branches, were similarly required to attend work-relevant and/or mandatory trainings without compensation. Pursuant to 29 U.S.C. § 216(b), plaintiffs therefore seek to represent the following plaintiff class:

> All persons who have been or are employed by Total Security Management – Illinois 1, LLC, and/or Total Security Management, Inc. as a protection officer at any time during the past three years anywhere in the United States, and who were not compensated for time spent in attendance at company sponsored trainings.

(Third Am. Compl., dkt. #85-1, ¶13.)

Defendants admit to not compensating plaintiffs, or any other protection officers, who attend such trainings.  However, they deny ever requiring employees to take such

5

training.  They also deny that this type of weapons/restraints training is directly related to any Protection Officer's job.

### C. Pre-Shift Work

Plaintiff Raychelle Freeman also avers that she was required by TSM - Wisconsin's Director of Operations, Ryan Weber, to report to work 15 minutes before the beginning of her daily paid shift, performed work during this time, and was not compensated for this extra work.  She alleges that all other protection officers working in Wisconsin were subject to the same policy and seeks to represent the following plaintiffs class pursuant to 29 U.S.C. § 216(b):

> All persons who have been or are employed by Total Security Management – Wisconsin, LLC, Total Security Management – Illinois 1, LLC, and/or Total Security Management, Inc. in Wisconsin as a protection officer at any time during the past three years, and who were required to perform work at the beginning of their shift without compensation and/or to attend uncompensated company sponsored trainings.

(Third Am. Compl., dkt. #85-1, ¶14.)

With respect to Freeman's allegations about unpaid pre-shift work, defendants deny that she or any other employees have been required to arrive at work before their official shift.   They further assert that employees are always encouraged to report all time worked and are paid accordingly.

### OPINION

## I.  Legal Standard for Conditional Certification

### A. Two-Step Framework

Section 216(b) of the FLSA authorizes plaintiffs to bring a "collective action" against an employer to recover unpaid compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action lawsuit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, a collective action brought pursuant to Section 216(b) of the FLSA requires employees or former employees to "opt in" by filing a written consent to join the action. *Woods v. N.Y. Life Ins. Co.,* 686 F.2d 578, 579-80 (7th Cir. 1982). In light of this special "opt-in" requirement, most courts (including this one) apply a two-step approach to certifying collective actions. *Austin v. CUNA Mut. Ins. Soc.,* 232 F.R.D. 601, 605 (W.D. Wis. 2006).

At the first "conditional" step of certification, a plaintiff need only make "a modest factual showing" that she and potential class members are similarly situated. *Id.* Conditional certification is typically made only on the basis of the plaintiff's allegations and supporting sworn statements. Courts need not consider rebuttal evidence submitted by the defendant. See *id.* at 606 ("[t]he proper focus at this stage is on plaintiff's submissions"); *Barrus v. Dick's Sporting Goods, Inc.,* 465 F. Supp. 2d 224 (W.D.N.Y. 2006) (rejecting contradictory affidavits from defendants at notice stage). Courts may consider such defendant-submitted evidence, but should give it dispositive weight only where the plaintiff's showing is already very weak. *E.g., West v. Border Foods, Inc.,* Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, 2006 U.S. Dist. LEXIS 46506, at *7 (D. Minn. July 10, 2006) ("[N]either the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts [supplied by a defendant]

which generally suggest that a collective action is improper.").  When courts choose to consider contradictory evidence at the conditional certification stage, all disputed issues of fact are decided in favor of the plaintiff.  *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992).

Unlike a typical plaintiff who files for conditional certification at the outset in advance of any discovery, defendants suggest that an "intermediate standard" of scrutiny should apply here because plaintiffs have had the opportunity to conduct some discovery. An intermediate standard may be appropriate when a court has expressly allowed "discovery on the issue of whether the plaintiffs are similarly situated" and the plaintiffs have been given access to a "list of other . . . potential members of the proposed class." *Bunyan v. Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 WL 2959932, 2008 U.S. Dist. LEXIS 59278, at *4 (S.D. Ill. July 31, 2008).  But that is not the case here. Plaintiffs have had limited discovery, deposing two of defendants' corporate representatives and some of defendants' employee witnesses.  Notably, they have not been permitted discovery into the matters that are most useful to establishing conditional certification – access to a list of fellow employees at other locations.  Therefore, an intermediate standard is inappropriate at this stage.  Accord, *Renfro v. Spartan Comp. Servs., Inc.*, 243 F.R.D. 431, 434 n. 4 (D. Kan. 2007) ("[T]he Court is not inclined to apply the heightened second stage certification analysis on the minimal amount of discovery before it.").

If an adequate showing is made at this first step, the court conditionally certifies a class and authorizes notice to potential class members.  *Kelly v. Bluegreen Corp.*, 256

8

F.R.D. 626, 629 (W.D. Wis. 2009).  At the close of discovery, and upon a motion for decertification from the defendant, the court conducts the more rigorous second step of the analysis, weighing the evidence submitted by both sides and determining whether the plaintiffs are in fact similarly-situated to those who have opted in.  *Id.*

### B. Similarly Situated

In this district, proving that the plaintiff and the class are similarly-situated requires a showing that they are all "victims of a common policy or plan that [is asserted to have] violated the law."  *Id.* at 629-30.  In other words, there must be some "factual nexus" connecting the plaintiff to the putative class members in such a way that they can be treated as one person for purposes of deciding liability.  *Sjoblom v. Charter Comm., LLC*, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008).  The idea is that when the representative plaintiff and the defendant debate liability as between themselves, they are effectively deciding that question for each and every class member.  The analysis is comparable to the "typicality" and "commonality" requirements of a Rule 23 class certification. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action . . . there isn't a good reason to have different standards for the certification of the two different types of action.").

It is insufficient to merely prove that all plaintiffs are subject to *some* (generic) factual similarities – the similarities must go to the merits and effectively strip unique, individual facts out of the liability analysis.  In some cases, the answer to this question is straightforward because liability hinges on a legal argument common to all.  These cases are primed for collective treatment.  In a misclassification case, for example, if a plaintiff

can demonstrate at the end of certification that the opt-in class members all perform the same duties (often a fact issue to which parties will stipulate), the parties can simply debate the narrow question of how a given employee with that set of duties should be classified.  In other cases, such as this one, commonality is heavily in dispute.  These cases are still amenable to collective action, but there is much overlap between fact issues that (1) are relevant to liability and (2) must be resolved in order to determine if the class is subject to a common policy and should be certified.

## II. Analysis

The parties find themselves at the "conditional certification" stage, so plaintiffs need only demonstrate a "reasonable basis" to believe themselves similarly situated to a class of opt-in plaintiffs.  *Austin*, 232 F.R.D. at 605.

### A.  Nationwide Class for Training Compensation

Plaintiffs allege that they and other similarly-situated plaintiffs were subject to a uniform nationwide policy which requires all protection officers to attend mandatory and uncompensated trainings directly related to their jobs.   Under FLSA-implementing regulations, trainings are considered compensable "work" unless the following four criteria are met:

> (1)  attendance at the trainings is outside of the employee's regular working hours;
> (2)  attendance is in fact voluntary;
> (3)  the course is not directly related to the employee's job; and
> (4)  the employee performs no productive work during the course.

29 C.F.R. § 785.27.

Plaintiffs contend that their trainings do not meet factors (2) or (3) above. Although lumped together by plaintiffs, the court will address each separately for the purposes of determining whether class certification is appropriate.

### i.    Job-Related Training

Defendants acknowledge that they offer training to all of their employees on how to properly use batons, handcuffs, pepper spray, firearms, and even techniques in first aid and basic self defense.  Plaintiffs supplied declarations from numerous protection officers working for TSM - Wisconsin and TSM - Illinois, averring that they are (1) required to carry some or all of the above-listed items as part of their work uniform, and (2) expected to use them against intruders, if necessary.  (*E.g.* Freeman Decl., dkt. #27, ¶¶4, 16.)  This policy appears confirmed by "TSM Post Orders," which state in pertinent part:

> Protection officers may be required to become involved in the possible apprehension and arrest of a criminal offender. Hence, it is very important that security personnel have a good knowledge of their authority, powers, techniques, mechanisms, and limitation in relation to arrest.

(Dkt. #38-1).  Finally, the designated corporate representative for TSM – Wisconsin admitted the importance to the company that its protection officers know how to use the objects they carry on the job, including handcuffs, batons, pepper spray and firearms. Nevertheless, TSM, Inc.'s designated corporate representative states that the company offers the training has a nationwide policy not to compensate for it.

Based on this evidence, it is not only reasonable but inevitable to believe that a large class of protection officers employed by TSM - Wisconsin and TSM - Illinois, as

well as employees of other TSM entities (in Indiana, Missouri and Arizona), are (1) expected to carry and use one or some combination of batons, pepper spray, handcuffs, and other equipment as part of their mandatory work "uniform," (2) provided training in the use of its equipment, and (3) not compensated for this training.  Such trainings certainly seem "directly related to the employee's job."  A nationwide class is, therefore, appropriate.

There is a remaining question as to whether TSM employees in Missouri and Arizona should be joined in this action despite plaintiffs' failure to formally name either TSM – Missouri or TSM – Arizona as defendants in any iteration of its complaint. Plaintiffs suggest that the answer is yes because TSM, Inc., the parent company, can be considered the employer of all of the protection officers, while defendants represent that "TSM, Inc. is strictly a holding company and does not have any employees."  (Br. in Opp., dkt. #63 at 2.)   If the latter is true, TSM, Inc. might not be considered an employer of any of the potential class members; for although the definition of employer under the FLSA is expansive, it does not cover holding companies that do not exercise control over workers.  *In re Enterprise Rent-A-Car Wage* & *Hour Empl. Practices Litig.*, 683 F.3d 462, 471 (3d Cir. 2012).  Rather than attempt to resolve this disagreement, the court will simply grant leave to plaintiffs to amend their complaint to name these other companies as defendants for purpose of seeking conditional nationwide class.

### ii.    Mandatory Training

As just discussed, there is evidence of a widespread policy not to pay employees for job-related training (mandatory or not).  As for plaintiffs' claim that some or all of

this training is *mandatory,* however, the evidence only allows a reasonable inference of such a policy as to TSM – Wisconsin employees.  To show that TSM - Wisconsin adopted a general policy requiring attendance at uncompensated equipment training, plaintiffs submitted affidavits from three protection officers based at the same bank in Madison, all of whom aver that they were told by TSM – Wisconsin Director Ryan Weber and his subordinate, Audrey Deshner, that they must be trained in the proper use of their work equipment -- pepper spray, handcuffs and batons.  Although the affidavits come from current and former employees working only at a single bank, the fact that Weber was the alleged source of the policy suggests it may have been statewide, at least, given that Weber oversees TSM operations across the State of Wisconsin.

Defendants respond with affidavits of seven TSM – Wisconsin employees, each denying the existence of mandatory training, but these are of only limited value in undercutting plaintiffs' evidence.  Three of the affiants state that they have never been asked to take, and have never taken, training classes in the use of batons, pepper spray and handcuffs, but two of these officers are not required to carry these items at work and the other only just started working for TSM.  Thus, their experiences are not particularly relevant to whether employees are commonly required to take training on use of their mandatory work equipment.  The other four officers have all taken training in the use of their work equipment, but aver they did so voluntarily.  Of course, no such requirement need ever have been necessary for (or made known to) employees who were eager to take classes in the first place.  Furthermore, that these employees wanted to train does not disprove that those who were less enthusiastic have been ordered to train.  Plaintiffs have

established a colorable argument that Mr. Weber was operating a Wisconsin-wide policy, so the court will grant conditional certification with respect to a class of Wisconsin plaintiffs who were required to attend training in use of their work equipment.

The situation is different for TSM - Illinois.  In comparison to TSM - Wisconsin, plaintiffs have actually submitted considerably stronger evidence that the TSM – Illinois management team required its employees to attend trainings.  Plaintiffs have obtained corporate emails showing that the office pushed Illinois employees to attend certain training sessions.  Plaintiffs have also submitted supporting affidavits from more than ten TSM – Illinois protection officers based in the Chicago area.  For example, named plaintiff Bobby Dean, Sr., a former supervisor, avers that he was told that training classes were mandatory by three different officers within the TSM – Illinois hierarchy: general manager Bernadette Ramos, Commander Juan Ipina and Captain Timothy Gottardo.  Opt-in plaintiff Amanda Joyce, who spent time as a protection officer and as a mobile supervisor in Illinois, confirms that she was (1) told the same by Ramos and Ipina, and (2) disciplined for not attending a training for which she had signed up.  While the latter could be unrelated to its being mandatory, the former assertion cannot.

Despite the strength of this evidence, the Illinois plaintiffs are also in a completely different situation than the Wisconsin plaintiffs because they face a different legal standard to prevail.  Unlike in Wisconsin, security guards in Illinois are required by state law to obtain a certain amount of basic and refresher training.  *See* 225 ILCS 447/25-20.  Training that is "imposed not by the employer, but by a governmental agency which requires the training for any employment in that line of work" is deemed "voluntary"

under the FLSA.  *Haszard v. Am. Med. Response Nw., Inc.*, 237 F. Supp. 2d 1151, 1153 (D. Ore. 2001) (citing Wage and Hour Letter Opinion, WHM 99:8195, 8195–96 (November 19, 1998)).  Thus, the evidence that TSM - Illinois has been telling its employees that they "need" to attend training sessions means something very different, from an FLSA liability standpoint, than the same evidence in Wisconsin, at least to the extent mandated by Illinois law.

To establish that the trainings were actually mandatory for FLSA purposes, the Illinois plaintiffs must show not only that they were required, but also that TSM – Illinois' standards "impose additional requirements on the employee [beyond the state's legal minimums,] such as taking a particular course."  *Id.*  There is some evidence in the record of this -- some Illinois employees averred that their managers refused to give training credit for state-recognized courses if given by previous employers, and thus imposed training hours in excess of the requirements under Illinois state law.  However, the evidence also indicates that such decisions were made on an ad hoc, training-by-training, employee-by-employee basis (*i.e.*, previous training was accepted in some instances, and not others), suggesting non-existence of the sort of uniform policy that lends itself to class treatment.  Moreover, plaintiffs neither seek conditional class certification on this more limited basis, nor have defendants had an opportunity to address the propriety of a conditional certification in this limited respect.

Because of these uncertainties and concerns, the court will decline (1) to join the Illinois plaintiffs into a single "mandatory training" class with the Wisconsin plaintiffs or

(2) to conditionally certify the Illinois plaintiffs into their own sub-class.  This latter decision is, however, without prejudice to any subsequent motion to certify.

Finally, the court will decline to certify a "nationwide minus Illinois" class of plaintiffs around a claim of mandatory training.  Plaintiffs have produced *no* testimony on the subject of a training requirement from any corroborating TSM - Indiana, TSM - Missouri or TSM - Arizona employee, and have produced only two pieces of evidence that tend to suggest that employees in these other states may be similarly-situated to those in the Wisconsin class.  The first is a section of the TSM "Management Handbook" which states that "[a]t a minimum our protection officers receive eight hours of refresher training every six months."  On its face, this is inconclusive:  it could mean that training is required or it could mean that training is merely offered to protection officers.  The referenced "refresher training" could also just as easily refer to certain mandatory but compensated on-the-job training (unrelated to this case).  (*See* Acaro Dep., dtk. #17, at 36:11-37:24.)  The second piece of evidence is the testimony of named plaintiff Bobby Dean, Sr., who was employed by TSM - Illinois but at one point supervised employees in Illinois and Indiana.  Mr. Dean's testimony is of little weight when it comes to Indiana employees, as there is no evidence that statements made to him by his TSM - Illinois bosses had any application to guards working solely in Indiana who were not subject to Illinois state licensure requirements.

**B.  Wisconsin Class for Pre-Shift Work**

Representative plaintiff Raychelle Freeman alleges that she and a class of other plaintiffs working in Wisconsin were subject to a company policy that required them to arrive and work at their posts 15 minutes early without compensation.  Under the FLSA, all hours worked must be compensated.  29 U.S.C. §§ 206, 207.  Defendants deny both that they have a policy of requiring fifteen minute early arrival, and that they refuse to pay employees who do arrive early and perform work.

### i.   Early Arrival and Work

For the claim that TSM - Wisconsin has a policy of requiring employees to arrive at their post 15 minutes early for work, plaintiffs again submit the testimony of witnesses who worked or work at a *single* BMO Harris bank.  All three say that they were instructed by TSM – Wisconsin operations manager Ryan Weber and his subordinate, Audrey Deschner, to comply with the 15 minutes early policy and they did not stand idle during this time, but instead actively performed administrative and security monitoring work. Plaintiffs have also submitted a copy of a BMO Harris "Security Protocol" sheet, which requires all security officers to arrive at their shift fifteen minutes early.

Defendants respond that this security protocol created by BMO Harris bank is irrelevant because it applies to BMO Harris employees, not to TSM employees.  They also challenge the accuracy of the testimony provided by plaintiffs' witnesses, pointing out that all three acknowledge their supervisors did not arrive to work early, even though the supervisors were theoretically subject to the same company policy.  Defendants supply declarations from employees at various other sites in Wisconsin, each of whom avers that they are either (1) never asked to arrive at work early, or (2) allowed to leave

work 15 minutes early if they come in early.  If they do happen to arrive early, these employees aver, they are told not to perform work until their shift starts.  Finally, defendants argue that testimony from one current and two former officers, all of whom worked at a single bank cannot support a reasonable inference that the policy existed elsewhere in Wisconsin.  They point out that TSM – Wisconsin employs about *40* protection officers in *14* locations.

While defendants make a strong argument against certification based on the limited evidence from three Wisconsin offenses, the court still finds that plaintiffs have articulated a reasonable expectation that other employees in Wisconsin have also been told to arrive at work 15 minutes early without work in this period.  The court's reasoning here echoes the analysis that led it to conditionally certify an "mandatory training" Wisconsin class: the orders to arrive early allegedly came from the top supervisor for Wisconsin, Ryan Weber.  In addition, although the BMO Harris policies may not technically apply to TSM employees, it is reasonable to infer that this policy may have influenced the instructions given to TSM employees who worked at BMO Harris banks in Wisconsin.

### ii.    Refusal to Pay for Extra Time

Plaintiffs also contend that TSM - Wisconsin has a policy of instructing employees not to write down time spent working beyond their assigned shift hours.  Specifically, plaintiffs' three witnesses state that they were instructed by Weber and Deschner not to record the early 15 minutes, but rather to record only their scheduled

18

start time.  These employees also aver they were told that they cannot work unscheduled overtime without permission.

Defendants point out that these same employees admit never seeing any documents directing them not to record their time.  Defendants also submit Weber's testimony that employees are instructed, both verbally and in their written post orders, to write down all of the time that they work in a shift, and are paid accordingly.  Weber denies that he *ever* told these plaintiffs not to write down all their time.  Finally, defendants assert that they have no incentive to reduce employees' time because their customers pay based on the number of hours their employees report.

Once again, defendants appear to have a strong argument on the merits, but at this stage the court must settle all disputed evidence in plaintiffs' favor for purposes of conditional certification.  While a closer question, plaintiffs have met their minimal burden of showing a reasonable basis to believe that other employees in Wisconsin were subject to a similar policy.

### C.  Summary of Conditional Certification

In accordance with the analysis in the preceding subsections of this opinion, the court will, therefore, grant conditional certification of three classes under the FLSA, 29 U.S.C. § 216(b).  Plaintiffs Raychelle Freeman and Bobby Dean, Sr. may represent the following nationwide class:

- All persons who have been or are employed by Total Security Management - Wisconsin, LLC, Total Security Management - Illinois 1, LLC, Total Security Management - Indiana, LLC, Total Security Management - Missouri, LLC, and Total Security

19

Management - Arizona, LLC, as a protection officer at any time during the past three years anywhere in the United States, and who were not compensated for time spent in attendance at company-sponsored trainings for proper use of equipment required to be worn or carried on the job.1

Plaintiff Raychelle Freeman may also represent two Wisconsin classes:

- All persons who have been or are employed by Total Security Management – Wisconsin, LLC, and/or Total Security Management, Inc. in Wisconsin as a protection officer at any time during the past three years, and who were *required* to attend uncompensated, company-sponsored trainings for use of work equipment.

- All persons who have been or are employed by Total Security Management – Wisconsin, LLC and/or Total Security Management, Inc. in Wisconsin as a protection officer at any time during the past three years, and who were required to regularly arrive at their post well in advance of their scheduled start time but denied compensation for work performed before the beginning of their shift.

## III. Proposed Notice

Defendants identify several deficiencies in plaintiffs' proposed class notice. For the most part, the court finds that the notice is adequate. As plaintiffs point out, it is modeled on a notice this court has previously approved in *Sherburn v. Duluth Trading Co., LLC*, W.D. Wis. Case No. 11-cv-428. Contrary to defendants' suggestion, the court believes that requiring defendants to post notice in the workplace is neither unnecessary nor overly intrusive, notwithstanding decisions, cited by defendants, to the contrary.2

---

1  Assuming that plaintiffs take the formal step of amending their complaint to add Missouri and Arizona as allowed by this opinion and order.
2  Each of the cases cited by defendants assume that the mailing addresses for the putative class members are accurate and adequate. The court does not make that

The court does agree with two of defendants' criticisms.  First, plaintiffs' use of bold to highlight the upsides (but not the downsides) of joining the class must be corrected, for it paints an inaccurate picture of the risk/reward balance for potential class members.  Accordingly, plaintiffs must un-bold the text:  (1) "you are not required to pay any money to participate" on the first page, and (2) "if there is no recovery, there will be no attorney's fees or costs chargeable to you from Plaintiff's lawyers" on the second page.

Second, for purposes of full disclosure to potential class members, the notice must inform prospective opt-in plaintiffs that they may be required to participate actively in the litigation and that they could be subject to a petition for defendants' costs of defending the case should defendants ultimately prevail.  Accordingly, at the end of the section entitled "Effect of Joining This Lawsuit," plaintiffs should add the following sentence: "The risks in joining this lawsuit may include: (1) being required to participate in the litigation by testifying at deposition and/or at trial; and (2) having a portion of the defendants' court costs and expenses assessed against you if you do not prevail on your claim."

Finally, plaintiffs will need to make the appropriate changes to the notice to reflect the first, second and third amendments to their complaint, as well as accommodate the changes ordered here.  Plaintiffs may submit revised notices for the court's review following issuance of this order.

---

assumption here.  Regardless, the court does not view this posting to be a burden.  The court does agree notice need only be posted at offices of TSM entities, and not at third-party work sites, understanding that this may reduce the effectiveness of such postings.

To facilitate notice, plaintiffs have also requested that the court order defendants to produce within ten days:

> a list, in electronic importable format (e.g., Microsoft Excel (.xls)), of all protection officers employed by TSM, from August 9, 2010, to the present, including his or her name, and most recent known address.

Absent objection from defendant to the terms or timing of this requested disclosure, the court will order that the list be produced within fourteen (14) days.

## ORDER

IT IS ORDERED that:

1.  Plaintiffs' motion to strike portions of defendants' evidence relating to conditional certification (dkt. #68) is DENIED;

2.  Plaintiffs' motion for conditional certification and court-facilitated class notice (dkt. #26) is GRANTED IN PART AND DENIED IN PART with the modifications set forth above; and

3.  Defendants shall produce to plaintiffs, within fourteen days of this order, a list, in electronic importable format (e.g., Microsoft Excel (.xls)), of all protection officers employed by TSM, from August 9, 2010, to the present, including his or her name, and most recent known address.

4.  A telephonic scheduling conference will be held on Monday, August 19, 2013, at 10:00 a.m. to put this matter back on the court's calendar; plaintiffs shall initiate the call to the court.

Entered this 9th day of August, 2013.

BY THE COURT:

_____/s/_____
WILLIAM M. CONLEY
District Judge

22